**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 19-20015-1-JAR |
| STEVAUGHNO BROWN, | |
| Defendant. | |

## MEMORANDUM AND ORDER

Defendant Stevaughno Brown was charged in four counts of a five-count Superseding Indictment (Doc. 18) for various firearm and drug offenses. This matter comes before the Court on Defendant's Motion to Suppress (Doc. 22). Defendant moves to suppress all evidence seized as a result of his March 1, 2018 arrest. The Court granted supplemental briefing after an evidentiary hearing on January 8, 2020. The motion is fully briefed, and the Court is now ready to rule, having reviewed the evidence and arguments adduced at the hearing. As explained more fully below, the Court denies Defendant's motion.[1]

## I.    Findings of Fact

Based on the exhibits and testimony admitted at the hearing, the Court finds as follows by a preponderance of the evidence. Defendant was arrested in the course of a police response to a request for assistance at a 7-Eleven in Kansas City, Kansas. The day's events were captured by a combination of store security cameras, police dash and internal car cameras, and cell phone footage. Except for the observations of Officer Eric Jones, the facts are largely undisputed.

---

[1] This matter was reassigned to the undersigned after evidentiary hearing. Doc. 29. The parties have consented to have the Court decide the motion upon review of the existing record without further hearing. Doc. 32.

The Court's findings about the observations of Officer Jones are based in part on his testimony. But the Court does not give full credit to his testimony, to the extent it is inconsistent with the 7-Eleven video camera footage. The Court finds material, and heavily relies upon, the footage of a video camera stationed directly behind the two cashiers, facing the front door and storefront windows of the 7-Eleven, and depicting the cash register area, the front interior area of the 7-Eleven and the parking area immediately in front of the store as seen through the front door and storefront windows of the 7-Eleven.

On March 1, 2018, Eric Jones, a Drug Enforcement Agency (DEA) task force officer with the Kansas City, Kansas Police Department (KCKPD), went to a 7-Eleven to buy groceries. Officer Jones was off duty. He entered the store, made his selection, and got in line at the register with his back at an angle to the storefront windows. The registers face the storefront, which empties onto a front row of parking spaces, the rest of the parking lot, and the fuel pumps. The first row of parking spaces was visible through the storefront windows, but the upper two-thirds of the storefront windows were partially obscured by dark window shades. When Officer Jones joined the line at the register, there was one vehicle parked near the front of the store.

Shortly after Officer Jones joined the register line, a dark SUV reversed into one of the front parking spaces and parked. A third car soon parked to the right of the SUV. At that point, Officer Jones briefly turned his head and upper body and bent down to look out the lower third of the windows, in the direction of his own car, which was parked at the fuel pumps. The fact that Officer Jones bent down to look out the storefront windows evidenced that the dark window shades that covered the upper two-thirds of the windows partially obscured his vision. It is undisputed that Officer Jones did not see the occupants of the SUV at that point.

After Officer Jones turned away from the windows and angled his body facing the cash registers, Defendant exited the driver's side of the SUV. Defendant was wearing a black hooded sweatshirt; the hood covered his head and hair. As Defendant walked towards the front door of the store, he did not face the windows; only his profile could be seen through the windows. And, the dark window shades obscured the profile view of Defendant's face. Officer Jones testified that he had a peripheral view of this individual exiting the SUV. To be sure, his peripheral view was inferior to the direct view depicted in the video camera footage.

As Defendant reached the front door, he removed his hood and held the door open for a white male who was also wearing a dark hooded sweatshirt. Defendant and this white male entered the store simultaneously. The video camera footage evidenced that Officer Jones's back was angled away from the front door and storefront windows. It is undisputed that while Jones stood in line at the register, he did not turn to look at Defendant or any other person who entered or exited the store. As many as eight customers milled around the front door of the store and cash register area during the time Jones stood in line at the cash register. The video camera footage evidenced that Jones's back was to the activity in and around the front door and his back was to the customers who stood behind him in line at the cash registers, including Defendant and the white male who was wearing the dark hooded sweatshirt.

Officer Jones completed his purchase and, as he turned to exit, saw Defendant waiting in line. By that time, Defendant had removed his hood and Defendant's braided hair was obviously visible to Officer Jones. Officer Jones recognized Defendant at that point, from prior investigative activity. After leaving the store, Officer Jones walked around the back of the SUV and recorded the tag number. As he passed the SUV's passenger side, he detected the odor of burnt marijuana. Officer Jones testified that he had not detected the odor of burnt marijuana on

3

Defendant or anyone else inside the store. Officer Jones then returned to his own vehicle and used his department radio to run the tag through dispatch. Dispatch advised that the SUV was reported stolen, and Jones requested additional officers be sent to the location.

Officers arrived in marked police cars with lights activated and surrounded the SUV, boxing it in. The video camera footage evidenced that the cashiers, Defendant, and some customers watched through the storefront windows the unfolding police activity surrounding the SUV. The video camera footage evidenced that in view of the cashiers, Defendant watched out the windows, quickly walked away from the cash register area, then turned and walked past the cash registers before quickly walking to the back of the store. Despite having completed purchasing a large pizza, Defendant left the pizza on the counter in front of the cashiers as he traversed the store, all while watching the police activity.

Officers Henre and Dorsett apprehended the SUV passenger without incident, and Officer Jones communicated to them on his police radio that the driver had braided hair and was still inside the store. Officer Dorsett entered the store. By then, Defendant was in the back aisle of the store. The video camera footage depicted the two cashiers communicating with Officer Dorsett by immediately pointing to the back of the store and pointing specifically at Defendant. Dorsett headed to the back of the store, encountered Defendant, and arrested him.

Meanwhile, a search of the SUV passenger revealed small quantities of marijuana and suspected crack cocaine, and a brief sweep of the SUV revealed additional narcotics, paraphernalia, and an assault rifle. At some point, upon realizing from witnesses and/or store video camera footage that Defendant had entered the employee office at the back of the store just before Officer Dorsett had arrested him, Officer Dorsett entered the office and recovered a firearm from a box under a desk in the office, in the same location where video camera footage

4

evidenced Defendant bending down momentarily before exiting the office. The door to the employee office was closed; it was not in a public space and not open to the public.

## II.     Discussion

### A.     Probable Cause

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that an offense has been or is being committed."[2]  An officer has probable cause to arrest if he "learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable [officer] to believe that an offense has been or is being committed by the person arrested."[3]  Probable cause "deals with probabilities and depends on the totality of the circumstances."[4]  As "a fluid concept," it is "not readily, or even usefully, reduced to a neat set of legal rules."[5]  "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," and is "not a high bar."[6]  However, suspicion alone is not sufficient, and "mere [proximity] to others independently suspected of criminal activity does not, without more, give rise to probable cause."[7]  Reasonable suspicion is a less demanding standard, and can be met with information that is different in quality, content, and reliability than the kind required to establish probable cause.[8]

As the arresting officer, Officer Dorsett required probable cause in order to arrest Defendant.  Under the "fellow officer" rule, or "collective knowledge" doctrine, if Officer Jones

---

[2] *Davenpeck v. Alford*, 543 U.S. 146, 152 (2004).

[3] *United States v. Dozal*, 173 F.3d 787, 792 (10th Cir. 1999).

[4] *District of Columbia v. Wesby*, --- U.S. ---, 138 S. Ct. 577, 586 (2018).

[5] *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

[6] *Id.*

[7] *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)).

[8] *Alabama v. White*, 496 U.S. 325, 330 (1990).

would have probable cause to arrest Defendant, then his instructions may provide probable cause for Officer Dorsett.[9] The same is true for reasonable suspicion.[10] Defendant argues that any probable cause finding depends on Officer Jones's identification, and that Officer Jones lacked probable cause to connect him to the SUV and order his arrest. The Government responds that Officer Jones obtained an unobstructed peripheral view of Defendant's hair and clothes, and that this was sufficient to connect him to the SUV as its driver. The Court finds that though Officer Jones may have lacked probable cause to arrest Defendant, additional facts show that Officer Dorsett had probable cause by the time of Defendant's arrest.

For Officer Jones to have probable cause, he must have either observed Defendant exit the SUV and enter the store, or have observed the other customers entering and leaving so as to exclude them as potential drivers. Officer Jones lacked probable cause to arrest Defendant for at least three reasons.

First, Officer Jones testified to observing Defendant's braided hair when Defendant exited the SUV. But at the time, Defendant was facing away from Jones and wearing a sweatshirt with the hood up. Even with peripheral vision, Jones could not have observed Defendant's face, head or hair through the partially obscured storefront windows. The Court finds that Officer Jones's description, which he conveyed to other officers, was colored by observations he made after encountering Defendant in the store—when Defendant's hood was down and his hair clearly visible. Officer Jones could not have seen Defendant's face or hair at the time Defendant exited the SUV.

---

[9] *See e.g.*, *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008).

[10] *See United States v. Hinojos*, 107 F.3d 765, 768 (10th Cir. 1997).

Second, while Officer Jones may have seen Defendant's clothes in his peripheral vision, Defendant was not the only customer wearing a black hooded sweatshirt. Another customer was dressed similarly to Defendant, and these two men entered the store simultaneously, something Officer Jones did not see. Officer Jones simply did not observe enough to either identify Defendant or exclude other customers—many of whom parked or entered around the same time—as potential drivers of the SUV.

Finally, while Officer Jones testified to smelling the odor of burnt marijuana coming from the passenger side of the SUV, he did not detect the odor of marijuana on Defendant or anyone else in the store. This further suggests that Officer Jones assumed Defendant to be the driver based on prior familiarity from other narcotics investigations, rather than contemporaneous observations. While these facts may have provided reasonable suspicion, they fell short of providing probable cause for an arrest. Thus, the question is whether Officer Jones's reasonable suspicion, that was communicated to Officer Dorsett, matured into probable cause prior to Defendant's arrest.

While mere suspicion and proximity do not give rise to probable cause, the existence of either suspicion or proximity does not weaken the effects of any other circumstances.[11] Although Officer Jones's observations alone did not give rise to probable cause, the Court must consider the continuity of circumstances between Officer Dorsett's entry to the store and his arrest of Defendant. Here, additional facts provided Officer Dorsett with probable cause.

When police arrived and surrounded the SUV, with flashing lights active, the video camera footage evidenced that the cashiers were watching. They saw police surround the vehicle

---

[11] *See Vazquez-Pulido*, 155 F.3d at 1216–17 ("[W]here there are facts *in addition* to one's association with someone engaged in criminal activity . . . we must consider whether the 'totality of the circumstances' known at the time of the arrest established probable cause." (emphasis added)).

and open the driver-side door.  Accordingly, they were aware that police were focused on the

SUV.  Further, unlike Officer Jones, they were facing the storefront windows during the time

Defendant exited the SUV and entered the store and unlike Officer Jones, they were in a position

to observe the many customers that entered and exited the store, as well as those customers

milling around the front door and cash register area.  The cashiers further observed Defendant's

furtive movements when he reacted to the unfolding police activity.  Although Defendant had

completed his purchase and a cashier had handed him his change, Defendant left his pizza on the

counter to walk back and forth across the store, twice passing his pizza (and the cashiers) before

quickly proceeding toward the back of the store.  When Officer Dorsett entered the store, the

cashiers excitedly pointed to the back of the store, and appeared to point directly at Defendant,

indicating that he was who the officer was seeking.  These observations and actions were

independent of and in addition to Officer Jones's reasonable suspicion.  Under the totality of the

circumstances, Officer Dorsett had probable cause to arrest Defendant.

### B.      Abandonment

A defendant typically cannot contest a search or seizure of voluntarily abandoned

property.[12]  For Fourth Amendment purposes, "[p]roperty is considered abandoned if the owner

lacks an objectively reasonable expectation of privacy."[13]  Abandonment carries a subjective and

an objective component.[14]  A defendant may abandon property by manifesting a subjective intent

to relinquish any right in its ownership, or if his expectation of privacy is no longer objectively

reasonable.[15]  Abandonment must be voluntary; it "is considered involuntary if it results from a

---

[12] *See United States v. Garzon*, 119 F.3d 1446, 1449 (10th Cir. 1997).

[13] *United States v. Juszczyk*, 844 F.3d 1213, 1214 (10th Cir. 2017).

[14] *Id.*

[15] *Id.*

violation of the Fourth Amendment."[16]  While illegal police conduct precludes abandonment, police pursuit or investigation at the time of abandonment "does not of itself render the abandonment involuntary."[17]  Defendant argues he did not abandon the firearm because he hid it in a box in a closed office in the 7-Eleven store with the intent of quickly reacquiring it later, and no one else knew that the box contained a firearm at the instant of his arrest.

Defendant placed the firearm in the store's private employee office after seeing police surround the SUV, but before encountering Officer Dorsett.  As a customer, Defendant had no right or privilege to access this office, and no reason to believe that he could return to retrieve the firearm.  While he may have hoped to eventually recover the firearm, his ability to do so "was dependent upon fate."[18]  Accordingly, Defendant abandoned the firearm before encountering Officer Dorsett, and therefore may not challenge its seizure.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Suppress (Doc. 22) is **denied**.

**IT IS SO ORDERED.**

Dated: March 23, 2020

s/ Julie A. Robinson

JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[16] *United States v. Flynn*, 309 F.3d 736, 738 (10th Cir. 2002).

[17] *Id.* (citing *United States v. Jones*, 702 F.2d 1169, 1172 (10th Cir. 1983)).

[18] *United States v. Morgan*, 936 F.2d 1561, 1571 (10th Cir. 1991) (quoting *Jones*, 707 F.2d at 1172).