IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

STEVAUGHNO BROWN,

    Defendant.

Case No. 19-20015-01-JAR

## MEMORANDUM AND ORDER

Defendant Stevaughno Brown was charged in four counts of a five-count Superseding Indictment for various drug and firearm offenses.[1] The Court previously denied Defendant's motion to suppress all evidence seized as a result of his arrest.[2] This matter is now before the Court on Defendant's Motion to Dismiss (Doc. 54) Counts 1, 2, and 4 of the Superseding Indictment based on prosecutorial misconduct. The Court held a hearing on the matter on November 24, 2020. The matter is fully briefed, and the Court is prepared to rule. Having carefully reviewed the record and the arguments presented, the Court denies Defendant's motion.

**I.  Background**

    **A.  Findings of Fact**

While the Court assumes the reader is familiar with its prior ruling on Defendant's motion to suppress, it restates the underlying facts to the extent necessary to frame its discussion of Defendant's motion to dismiss.

---

[1] Doc. 18.
[2] Doc. 33.

Defendant was arrested in the course of a police response to a request for assistance at a 7-Eleven in Kansas City, Kansas. The day's events were captured by a combination of store security cameras, police dash and internal car cameras, and cell phone footage.

On March 1, 2018, Eric Jones, a Drug Enforcement Agency task force officer with the Kansas City, Kansas Police Department, went to a 7-Eleven to buy groceries. Officer Jones was off duty. He entered the store, made his selection, and got in line at the register with his back at an angle to the storefront windows. The registers face the storefront, which empties onto a front row of parking spaces, the rest of the parking lot, and the fuel pumps. The first row of parking spaces was visible through the storefront windows, but the upper two-thirds of the storefront windows were partially obscured by dark window shades. When Officer Jones joined the line at the register, there was one vehicle parked near the front of the store.

Shortly after Officer Jones joined the register line, a dark SUV reversed into one of the front parking spaces and parked. A third car soon parked to the right of the SUV. At that point, Officer Jones briefly turned his head and upper body and bent down to look out the lower third of the windows, in the direction of his own car, which was parked at the fuel pumps. The fact that Officer Jones bent down to look out the storefront windows evidenced that the dark window shades that covered the upper two-thirds of the windows partially obscured his vision. It is undisputed that Officer Jones did not see the occupants of the SUV at that point.

After Officer Jones turned away from the windows and angled his body facing the cash registers, Defendant exited the driver's side of the SUV. Defendant was wearing a black hooded sweatshirt; the hood covered his head and hair. As Defendant walked towards the front door of the store, he did not face the windows; only his profile could be seen through the windows. And, the dark window shades obscured the profile view of Defendant's face.

2

As Defendant reached the front door, he removed his hood and held the door open for a white male who was also wearing a dark hooded sweatshirt.  Defendant and this white male entered the store simultaneously.  The video camera footage evidenced that Officer Jones's back was angled away from the front door and storefront windows.  It is undisputed that while Jones stood in line at the register, he did not turn to look at Defendant or any other person who entered or exited the store.  As many as eight customers milled around the front door of the store and cash register area during the time Jones stood in line at the cash register.  The video camera footage evidenced that Jones's back was to the activity in and around the front door and his back was to the customers who stood behind him in line at the cash registers, including Defendant and the white male who was wearing the dark hooded sweatshirt.

Officer Jones completed his purchase and, as he turned to exit, saw Defendant waiting in line.  By that time, Defendant had removed his hood and Defendant's braided hair was obviously visible to Officer Jones.  Officer Jones recognized Defendant at that point, from prior investigative activity.  After leaving the store, Officer Jones walked around the back of the SUV and recorded the tag number.  As he passed the SUV's passenger side, he detected the odor of burnt marijuana.  Officer Jones then returned to his own vehicle and used his department radio to run the tag through dispatch.  Dispatch advised that the SUV was reported stolen, and Officer Jones requested additional officers be sent to the location.

After officers arrived in marked police cars with lights activated, Officers Henre and Dorsett apprehended the SUV passenger without incident, and Officer Jones communicated to them on his police radio that the driver had braided hair and was still inside the store.  Officer Dorsett entered the store.  By then, Defendant was in the back aisle of the store.  The video camera footage depicted the two cashiers communicating with Officer Dorsett by immediately

3

pointing to the back of the store and pointing specifically at Defendant. Dorsett headed to the back of the store, encountered Defendant, and arrested him.

Meanwhile, a search of the SUV passenger revealed small quantities of marijuana and suspected crack cocaine, and a brief sweep of the SUV revealed additional narcotics, paraphernalia, and an assault rifle. At some point, upon realizing from witnesses and/or store video camera footage that Defendant had entered the employee office at the back of the store just before Officer Dorsett had arrested him, Officer Dorsett entered the office and recovered a firearm from a box under a desk in the office, in the same location where video camera footage evidenced Defendant bending down momentarily before exiting the office. The door to the employee office was closed; it was not in a public space and not open to the public.

### B.     Grand Jury Proceedings

On March 13, 2019, a grand jury sitting in the District of Kansas returned the original five-count indictment, charging Defendant in four of the five counts: (1) possession with the intent to distribute a mixture and substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 1); (2) possession with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 2); (3) possession of a firearm, in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4); and (4) felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 5).[3]

---

[3] Doc. 1. The grand jury indicted Dontae Brooks as to Counts 1, 2, and 3. *See id.*

Officer Jones was the government's sole witness at the grand jury proceeding.[4]  In pertinent part, the following exchange transpired between the prosecutor and Officer Jones at the start of the proceeding:

> Q. And were you working on March 1st of 2018?
>
> A. I was and I got off about five o'clock.  Picked up my son.  Stopped by 7-Eleven . . . in Kansas City, Kansas, to pick up some milk because the wife asked me to.  So I parked at the pumps and went inside to get the milk, standing in line, *when I observed an individual that I know as Stevaughno Brown walk into the 7-Eleven store, he's in line behind me, just made note of it*.  When I got done I walked out, *I saw the car he'd gotten out of* and as I walked past it I could see that there was a passenger in the car and a very, very strong odor of marijuana emitting from the vehicle. . . .[5]

Officer Jones then described the events that unfolded after dispatch advised him that the vehicle was reported stolen:

> I had my son with me.  Obviously there was nothing I was going to do and I was at that point off duty, so I just let the district units know on the radio that this vehicle was there, if they could get there in time, maybe try to get the guys in custody that were driving it.  So I stayed there just to give them updates. . . .  [T]hey said they were pulling in, at which point the passenger, who was later identified as Dontae Brooks, when he saw the police officer pulling in, he jumped over from the passenger's seat into the driver's seat and went to take off, Stevaughno [Brown] was still in the 7-Eleven. . . .  They got [Dontae Brooks] into custody.  *I advised them over the radio that the driver was still in the store, gave them a description*.  They went in and just took him into custody with no incident inside the 7-Eleven.[6]

On September 25, 2019, the government empaneled a second grand jury to amend the language in Count 5 in light of the Supreme Court's *Rehaif v. United States*[7] decision.  Again,

---

[4] *See* Doc. 54-1.

[5] *Id.* at 3 (emphasis added).

[6] *Id.* at 4 (emphasis added).

[7] 139 S. Ct. 2191, 2194 (2019) (clarifying the *mens rea* applicable to a violation of 18 U.S.C. § 922(g)).

5

Officer Jones was the government's sole witness at the second grand jury proceeding.[8] Before Officer Jones offered his testimony, the prosecutor admitted the transcript of the March 13, 2019 grand jury proceeding as an exhibit and gave the grand jury an opportunity to review it.[9] Though the purpose of the proceeding was to perfect Count 5, the prosecutor then asked Officer Jones to "give the grand jury an overview of [his] previous testimony."[10] Relevant to Defendant's motion, Officer Jones recounted:

> Okay. On March 1st, 2018, I was at a gas station, a 7-Eleven in Kansas City, Kansas . . . . *When I was inside I had recognized one of the individuals that had pulled up in front of the store, walked inside*. As I walked out I could smell a strong odor of marijuana emitting from the vehicle. I grabbed the tag number for the car because he was a individual that we'd been investigating so it was just more for probably intel purposes at that time. When I ran the tag through dispatch they advised that the vehicle was stolen, by which time I coordinated a couple of patrol officers to come to the area. . . .[11]

The same day—September 25, 2019—the grand jury returned the Superseding Indictment, charging Defendant on all four counts against him.[12]

### C. Defendant's Motion to Suppress

On November 27, 2019, Defendant filed a motion to suppress all evidence seized as a result of his March 1, 2018 arrest, arguing that he was arrested without probable cause.[13] This Court denied the motion to suppress.[14] In its ruling, the Court recognized discrepancies between Officer Jones's testimony and the video camera footage, particularly as it relates to Officer

---

[8] *See* Doc. 54-2.

[9] *Id.* at 3.

[10] *Id.* at 4.

[11] *Id.* (emphasis added).

[12] Doc 18. The grand jury indicted Dontae Brooks as to Counts 1, 2, and 3. *See id.*

[13] Doc. 22.

[14] Doc. 33.

Jones's ability to see Defendant exit the driver's side door of the SUV and stand behind him in line at the 7-Eleven. In its findings of fact, the Court explained:

> The Court's findings about the observations of Officer Jones are based in part on his testimony. But the Court does not give full credit to his testimony, to the extent it is inconsistent with the 7-Eleven video camera footage. The Court finds material, and heavily relies upon, the footage of a video camera stationed directly behind the two cashiers, facing the front door and storefront windows of the 7-Eleven, and depicting the cash register area, the front interior area of the 7-Eleven and the parking area immediately in front of the store as seen through the front door and storefront windows of the 7-Eleven.[15]

The Court identified "at least three reasons" why Officer Jones lacked probable cause to arrest Defendant, each of which related to Officer Jones's inability to identify Defendant as the driver of the SUV based on contemporaneous observations.[16] First, the Court found that, "[e]ven with peripheral vision, [Officer] Jones could not have observed Defendant's face, head, or hair through the storefront windows" at the time Defendant exited the SUV.[17] The description Officer Jones conveyed to other officers, the Court explained, "was colored by observations he made after encountering Defendant in the store—when Defendant's hood was down and his hair clearly visible. Officer Jones could not have seen Defendant's face or hair at the time Defendant exited the SUV."[18]

Second, the Court found that, while Officer Jones may have observed Defendant's clothing with his peripheral vision, another customer who entered the store at the same time as Defendant also wore a black hooded sweatshirt. Officer Jones, who did not see the two men

---

[15] *Id.* at 2.

[16] *Id.* at 6.

[17] *Id.*

[18] *Id.*

7

enter the store, "simply did not observe enough to either identify Defendant or exclude other customers . . . as potential drivers of the SUV."[19]

Finally, the Court noted that Officer Jones did not detect the odor of marijuana on Defendant or anyone else in the store, which further suggests that Officer Jones "assumed Defendant to be the driver based on prior familiarity from other narcotics investigations, rather than contemporaneous observations."[20] "[T]hese facts may have provided reasonable suspicion, [but] they fell short of providing probable cause for an arrest."[21] The Court then held that, although Officer Jones did not have probable cause for an arrest, Officer Dorsett did have probable cause to arrest Defendant, based on observations and actions independent of and in addition to Officer Jones's reasonable suspicion.[22] Accordingly, the Court denied Defendant's motion to suppress.

## II.     Legal Standard

Defendant moves to dismiss Counts 1, 2, and 4 of the Superseding Indictment under Fed. R. Crim. P. 12(b)(3)(A)(v) based on prosecutorial misconduct during the most recent grand jury proceeding. Dismissal of an indictment on this basis is an extraordinary remedy.[23] "It is applied to insure proper standards of conduct by the prosecution."[24] Dismissal may be based on the Fifth Amendment Due Process Clause or on the court's inherent supervisory powers.[25] Dismissal on the basis of prosecutorial misconduct is only appropriate if Defendant can show he was

---

[19] *Id.* at 7.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 8. The Court also rejected Defendant's claim that he did not abandon the firearm at issue. *Id.* at 8–9.

[23] *United States v. Pino*, 708 F.2d 523, 530 (10th Cir. 1983).

[24] *Id.*

[25] *Id.* (citing *United States v. Cederquist*, 641 F.2d 1347, 1352 (9th Cir.1981)).

8

prejudiced due to the alleged error, which in turn requires a showing that the error "substantially influenced the grand jury's decision to indict, or . . . there is a grave doubt that the decision to indict was free from the substantial influence of such violations."[26] "A grand jury's independent judgment is compromised when the prosecutor's misconduct invades the grand jury's independent deliberative process and substantially affects its decision to indict."[27]

### III.     Discussion

Defendant argues that Counts 1, 2, and 4 of the Superseding Indictment should be dismissed because the government knowingly presented "false and misleading testimony on material factual issues."[28] The leading case in support of the claim that dismissal of an indictment may be warranted where the prosecutor knowingly presents perjured testimony to the grand jury is *United States v. Basurto*.[29] In *Basurto*, a divided panel of the Ninth Circuit held that "the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached."[30] Although the Tenth Circuit never explicitly adopted *Basurto* and has noted its limited reach and questionable

---

[26] *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986)).

[27] *United States v. Hillman*, 642 F.3d 929, 933 (10th Cir. 2011) (citations omitted).

[28] Doc. 54 at 14, 16.

[29] 497 F.2d 781 (9th Cir. 1974).

[30] *Id.* at 785.

9

validity,[31] the Court assumes that *Basurto* applies in the Tenth Circuit for purposes of this motion.[32]

To obtain dismissal of an indictment based on perjured grand jury testimony, Defendant must show that "(1) a witness *intentionally* testified falsely before the grand jury and (2) such testimony was *material* to the grand jury's decision to return an indictment."[33]  Moreover, where a defendant claims that the government elicited the false testimony before the grand jury, the Tenth Circuit "require[s] a showing the government deliberately attempted to influence the grand jury with [the] false testimony."[34]

In this case, Defendant contends that Officer Jones misled the grand jury into believing that he saw Defendant park the SUV in front of the 7-Eleven, exit the driver's side door, and then walk into the store, when the video camera footage shows that he could not have made these observations.  Defendant asserts that Officer Jones's false and misleading testimony was material to the drug charges, Counts 1 and 2, as well as Count 4, charging possession of a firearm in furtherance of a drug trafficking offense, because the government did not present any other evidence connecting Defendant to the drugs seized from the vehicle to the grand jury.[35] Defendant claims that both the government and Officer Jones knew or should have known that Officer Jones's testimony was false and misleading because they had access to video camera

---

[31] *See Talamante v. Romero*, 620 F.2d 784, 790–91, 790 n.7 (10th Cir. 1980); *see also Moreland v. Madrid*, 232 F.3d 902, 2000 WL 1594219, at *2 (10th Cir. 2000) (assuming that *Basurto* "is the law of this circuit"); *Doran v. Stratton*, 930 F.2d 33, 1991 WL 35249, at *2 (10th Cir. 1991) ("assuming, without deciding," that *Basurto* applies).

[32] *See United States v. Foote*, 188 F. Supp. 2d 1303, 1306 (D. Kan. 2002).

[33] *Id.* (first citing *United States v. Hargus*, 128 F.3d 1358, 1365 (10th Cir. 1997); then citing *Basurto*, 497 F.2d at 784; and then citing *Talamante*, 620 F.2d at 790).

[34] *United States v. Cooper*, 396 F. Supp. 3d 992, 995 (D. Kan. 2019).

[35] Defendant argues that Count 4 should be dismissed in addition to the drug charges because the government cannot prove possession of a firearm in furtherance of a drug trafficking offense without evidence that Defendant was involved in a drug trafficking offense.

10

footage of the events prior to the grand jury proceedings. Nevertheless, the government failed to correct Officer Jones's testimony. Accordingly, Defendant urges the Court to dismiss those counts.

The Court agrees that Officer Jones's testimony to the grand jury was misleading, but only insofar as it indicated that Officer Jones actually saw Defendant park the SUV, exit the vehicle, and then walk into the 7-Eleven. As the Court found in its March 23, 2020 order, the video camera footage shows that Officer Jones could not have made these observations. Instead, Officer Jones inferred that Defendant was the driver of the vehicle under the circumstances, and the video camera footage later confirmed that assumption. However, no evidence suggests that Officer Jones's misstatements to the grand jury were intentional or that the government knew the testimony was misleading.

"False testimony given as a result of confusion, mistake, or faulty memory does not justify dismissal of an indictment."[36] As both parties recognize, Officer Jones has consistently maintained that he observed the SUV enter the parking lot and, out of his peripheral vision, obtained a description of the driver through the storefront windows. Though the video camera footage shows that Officer Jones did not observe enough to identify Defendant as the driver of the SUV, Defendant does not allege, much less demonstrate, that Officer Jones testified with willful intent to mislead. In its March 23, 2020 order, the Court found that Officer Jones's description was colored by observations he made after encountering Defendant in the 7-Eleven—when Defendant's hood was down, and Officer Jones recognized Defendant from other narcotics investigations. Under these circumstances, the Court cannot find that Officer Jones's misstatements were intentional rather than inadvertent.

---

[36] *Foote*, 188 F. Supp. 2d at 1307.

Moreover, Defendant does not make the requisite showing that the government knew Officer Jones's testimony was misleading such that the Court can conclude the government's failure to correct the misstatements indicates a "deliberate[] attempt[] to influence the grand jury with false testimony."[37] While the government had access to the video camera footage, no evidence suggests that the government knew that Officer Jones's testimony was misleading. As noted above, Officer Jones has consistently maintained his account. The government therefore had no reason to doubt Officer Jones's account and carefully examine the footage to determine whether his account was false or misleading. Nor is not immediately apparent from the video camera footage that Officer Jones could not have identified Defendant as the driver of the SUV based on contemporaneous observations.[38] At the time Defendant parked in one of the front parking spaces and exited the SUV, Officer Jones was standing within a few feet of the storefront windows, with his back at an angle to the storefront windows. Officer Jones's inability to witness these events as they unfolded only became clear to the Court after it studied the video camera footage frame by frame in the context of a motion to suppress. Where a prosecutor's failure to correct an agent's testimony is, at worst, an oversight, the extraordinary remedy of dismissal of the indictment is not called for.[39]

This case does not involve "abuse, bad faith, or vindictiveness."[40] Defendant does not take issue with the substance of Officer Jones's testimony; he does not dispute that he drove, parked, and exited the driver's side of the SUV. Rather, Defendant's concern is, in essence, that

---

[37] *Cooper*, 396 F. Supp. 3d at 995.

[38] *Cf. id.* (dismissing an indictment involving charges of sexual abuse where the government had access to the victim's medical exam clearly showing no evidence of penetration during the grand jury proceeding but failed to correct the case agent's false testimony that the medical exam indicated "some form of penetration").

[39] *United States v. Page*, 808 F.2d 723, 727 (10th Cir. 1987).

[40] *Id.*

12

the government misled the grand jury about the nature of the evidence, causing the grand jury to believe it received eyewitness testimony when it did not.  However, in light of the video camera footage clearly showing that Defendant was, in fact, the driver of the SUV, the government would have had no reason to deliberately mislead the grand jury into thinking it was receiving eyewitness testimony.  Officer Jones's account could not have strengthened the government's case.  Thus, the Court is not convinced that the government knowingly presented false or misleading testimony before the grand jury.

Finally, Defendant falls short of showing that Officer Jones's misstatements were material.  Again, Defendant does not dispute that he was the driver of the SUV.  Defendant is correct that Officer Jones did not directly observe Defendant park and exit the SUV; Officer Jones inferred Defendant was the driver under the circumstances, and that assumption was later confirmed by the video camera footage.  But the Court cannot conclude that Officer Jones's inadvertent misstatements were material to the grand jury's decision to return an indictment on Counts 1, 2, and 4.[41]

For these reasons, the Court finds that the circumstances in this case do not rise to the level of prosecutorial misconduct that would establish a due process violation or justify an exercise of the Court's supervisory power.  Accordingly, Defendant's motion to dismiss Counts 1, 2, and 4 of the Superseding Indictment is denied. !

---

[41] *Cf. United States v. Hogan*, 712 F.2d 757, 761–62 (2d Cir.1983) (finding dismissal of an indictment required where the prosecutor repeatedly elicited false evidence, called the defendant a "real hoodlum who should be indicted as a matter of equity," and speculated on the defendant's connection with other crimes, because the prosecutor impaired the grand jury's independent judgment); *United States v. Feurtado*, 191 F.3d 420, 423–25 (4th Cir. 1999) (affirming the district court's dismissal of an indictment on charges related to a substantial drug organization where the case agent "overstepped his bounds" and connected the defendants to a series of homicides unrelated to the charges because, though inadvertent, there was some doubt that the decision to indict was free from the influence of the testimony).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Stevaughno Brown's Motion to Dismiss (Doc. 54) is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 31, 2020

                                                  S/ Julie A. Robinson
                                                  JULIE A. ROBINSON
                                                  CHIEF UNITED STATES DISTRICT JUDGE